# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**ROBERT G. NORTON,**

    **Plaintiff,**

v.                                                                    **Case No: 5:16-cv-130-Oc-10PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision denying his application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). Upon a review of the record, the memoranda, and the applicable law, I submit that the Commissioner's decision should be affirmed.

**I.    BACKGROUND**

Plaintiff filed applications for DIB and SSI, alleging disability beginning July 31, 2002. (Tr. 268–83). The claims were denied initially, and upon reconsideration. (Tr. 177–88, 193–203). At Plaintiff's request, a hearing was held before Administrative Law Judge Robert Droker ("ALJ"), who then issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 97–112, 114–38).

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

- 2 -

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 99). At step two, the ALJ determined that Plaintiff had the following severe impairments: osteoarthritis of the right knee; osteoarthritis of the thumb; degenerative joint disease; disorders of the spine; hypertension; obesity; affective mood disorder and bipolar disorder. (Tr. 99).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 100–01). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with limitations: "The claimant must avoid ladders or unprotected heights; he must avoid operation of heavy moving machinery; he is limited to occasional bending, crouching, kneeling or stooping, but no squatting or crawling. The claimant is limited to simple tasks and low stress work environments, free of production line rate pace of work." (Tr. 101–05). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 105).

At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform—ticket seller, cashier, and housekeeper. (Tr. 107). Thus the ALJ found that Plaintiff was not disabled from July 31, 2002, through the date of the decision. (Tr. 107).

Then, the Appeals Council initially denied Plaintiff's request for review but set aside that decision in order to consider additional evidence presented by Plaintiff. (Tr. 1–8, 23–29). After considering that additional evidence, the Appeal Council again denied Plaintiff's request for

review, making the hearing decision the final decision of the Commissioner.  (Tr. 1–8).  With his administrative remedies exhausted, Plaintiff filed the instant appeal.  (Doc. 1).

### II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision.  *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).  Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a

contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III. DISCUSSION

Plaintiff raises three arguments on appeal: (1) the ALJ erred by failing to include any manipulative limitations in the RFC, (2) the ALJ erred by failing to state the weight he accorded to the medical opinion of state agency consultant Alan Coleman, M.D., and (3) the Appeals Council failed to remand this case based on new, material evidence that Plaintiff submitted. I disagree.

#### A. Substantial evidence supports the RFC and the ALJ properly considered Dr. Coleman's opinion

Plaintiff was diagnosed with "moderate to severe [carpometacarpal] joint osteoarthritis of the thumb." (Tr. 525). He underwent arthroplasty surgery of his left thumb in January 2012.[2] (Tr. 482). Plaintiff asserts that the limitations contained in the RFC fail to account for his thumb osteoarthritis and surgery, as the RFC does not include any manipulative limitations. Closely related to this argument, he also asserts that the ALJ improperly considered the opinion of Dr. Coleman, who—according to Plaintiff—opined that Plaintiff had limited use of his left thumb. Given the connection between these two arguments, I will address them collectively. As explained below, Plaintiff has failed to meet his burden of showing that his thumb osteoarthritis causes disabling or additional limitations not accounted for by the RFC. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he [or she]

---

[2] "'Arthroplasty' is defined as 'plastic surgery of a joint or of joints; the formation of a movable joint.'" *Veasey v. Astrue*, No. CIV.A. 1:06-CV-1909A, 2008 WL 504388, at *3 (N.D. Ga. Feb. 21, 2008) (quoting DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (28th ed.) at 141).

is disabled, and, consequently, [the claimant] is responsible for producing evidence in support of his [or her] claim.").

First, the ALJ discussed Plaintiff's thumb osteoarthritis and noted that an orthopedic surgeon confirmed that the impairment was moderate to severe. (Tr. 103). While the ALJ failed to mention Plaintiff's arthroplasty surgery, the ALJ certainly summarized Plaintiff's post-surgery-discharge notes from occupational therapist Raphael Rios, O.T.R., who noted in July 2014 (about six months after the surgery) that post-surgery therapy had improved Plaintiff's hand use, that he had met almost all of the therapy goals, and that he was discharged to a home exercise program. (Tr. 103, 604). Notably, Plaintiff does not assert that his occupational therapy was unsuccessful or that the surgery somehow failed; nor does he assert that his occupational therapist or his thumb surgeon found that his thumb use is limited.

And none of the evidence that Plaintiff points to here undermines the ALJ's decision to not include manipulative limitations in the RFC. For instance, Plaintiff notes several places in the record that the ALJ purportedly ignored (Pl.'s Br. at 12), but none of these records help him out much, if at all: notes from Plaintiff's thumb surgeon Armand E. Zilioli, M.D., dated February 28, 2012, show what appears to be his post-operation recovery plan, which included occupational therapy (Tr. 452–53); there is a note indicting that Plaintiff gave informed consent for the thumb surgery (Tr. 482); there is evidence that Plaintiff had thumb osteoarthritis (Tr. 590); and Plaintiff's own functional report shows only that he has hand arthritis and that his own self-reported limitations included not being able to play the guitar (Tr. 312, 342, 346–47), which is undermined by Plaintiff's July 2013 (about eighteen months after his surgery) statement that he was able to return to playing the guitar (Tr. 722).

The only other evidence that Plaintiff presents here in support of his argument is the opinion of Dr. Coleman. On a related note, Plaintiff also argues that the ALJ failed to properly consider Dr. Coleman's opinion under *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011). But as shown *infra*, Dr. Coleman's opinion fails to support Plaintiff's argument and the ALJ did not err under *Winschel*.

About eleven months after the thumb surgery, state-agency consulting physician Dr. Coleman completed a *Physical Residual Functional Capacity Assessment*. (Tr. 646–51). In that assessment Dr. Coleman checked (or left unchecked) boxes that appear to indicate that Plaintiff has manipulative limitations in handling (gross manipulation) and fingering (fine manipulation). (Tr. 648). The doctor explained, however, *in writing* several findings that completely undercut any indications that the doctor made via the checked (and unchecked) boxes. *Cf., e.g.*, *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (reasoning that the Commissioner may discredit conclusory assertions contained in a questionnaire that consist of only checked boxes and that lack any supporting explanations); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (noting that good cause exists if the treating physician's opinion is conclusory).

Indeed, Dr. Coleman explained that Plaintiff was diagnosed with primary osteoarthritis of the left thumb, that he had undergone a single joint replacement, that the "[o]utcome of the thumb surgery is not made clear from [the] M[edcial] E[vidence of] R[ecord]." (Tr. 648). Dr. Coleman then went on to clarify that Plaintiff "*may* have limited use of" his left thumb and that Plaintiff otherwise had "no problem with manual dexterity."[3]  (Tr. 648) (emphasis added). Based on the doctor's explicit explanation that the outcome of Plaintiff's thumb surgery was uncertain at that

---

[3] Further, Jesse Palmer, M.D. (another state agency consultant), noted Plaintiff's left thumb arthroplasty surgery and that his "[f]ine motor coordination on left [sic] has moderate impairments," but Dr. Palmer also found that Plaintiff has no manipulative limitations. (Tr. 159–60).

- 6 -

time and that he *may* have limited use of his thumb, I am compelled to submit that Dr. Coleman did not find that Plaintiff actually had a functional limitation.

Given the lack of an opinion that Plaintiff has a disabling or additional limitation that the RFC fails to account for, Plaintiff has failed to show that Dr. Coleman's opinion is inconsistent with the RFC and thus any failure by the ALJ to state what weight he accorded the opinion does not demand remand. *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (finding that an ALJ's failure to state the specific weight of a treating doctor's opinion is harmless error when the correct applications of the regulations would not contradict the ALJ's ultimate findings); *see Caldwell v. Barnhart*, 261 F. App'x. 188, 190 (11th Cir. 2008); *Rivera v. Comm'r of Soc. Sec.*, 2013 WL 557214, at *9–10 (M.D. Fla. Feb. 14, 2013).

For these reasons, the ALJ's consideration of the medical evidence and the RFC assessment is supported by substantial evidence.

### B.  The Appeals Council properly rejected the post-hearing evidence

The Appeals Council will review a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *see also* Notice of Appeals Council Action (Tr. 1–4) (stating that the Appeals Council will review the case if it receives "new and material evidence and the [ALJ's] decision is contrary to the weight of all the evidence now in the record").  In other words, "[t]he Appeals Council must consider new, material and chronologically relevant evidence." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  The Appeals Council, however, is only required "to apply the correct legal standards in performing its duties;" so, when denying a request for review, it is not required "to give a detailed rationale for why each piece of new

evidence submitted to it does not change the ALJ's decision." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014).

"When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error of law." *Keeton*, 21 F.3d at 1066; *Ingram*, 496 F.3d at 1265 (noting that the decision of the Appeals Council to deny review after refusing to consider new evidence is a part of the "final decision" of the Commissioner subject to judicial review under sentence four of section 405(g)). Indeed, "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. But if the "additional evidence [is] either cumulative of the evidence before the ALJ or [is] not chronologically relevant, and none of it undermine[s] the substantial evidence supporting the ALJ's decision," the Commissioner's decision is due to be affirmed. *Mitchell*, 771 F.3d at 785.

The Appeals Council here considered evidence that Plaintiff submitted after the ALJ's decision and found that this "new information is about a later time" and therefore "does not affect the decision about whether [Plaintiff] was disabled beginning on or before April 15, 2014." (Tr. 2). The Appeals Council then advised Plaintiff of his right to file a new application. (Tr. 2); *see* 20 C.F.R. § 404.970 ("If you submit additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision as required in paragraph (a)(5) of this section . . . , the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application.").

Plaintiff argues the Appeals Council erred by finding that two pieces of additional evidence were not chronologically relevant: (1) results from a MRI study performed after the ALJ rendered

his decision and (2) an opinion from a physician who started treating Plaintiff seven months after the ALJ's decision.   As I will explain, I submit that the Appeals Council did not err.

1. On April 15, 2014, the ALJ rendered his written decision finding that Plaintiff is not disabled. Afterwards, Plaintiff submitted the results from a May 23, 2014 MRI to the Appeals Council. (Tr. 89–91).   On its face, the MRI results were taken more than a month after the period of disability and there is no medical opinion in the record that states (or explains) how these results relate back to a prior date.   Admittedly, Plaintiff's notion that many of the MRI findings are abnormalities that do not—to use Plaintiff's turn of phrase—"occur[] overnight" is well taken. (*See* Pl.'s Br. at 20).   But still, without some evidence (like the opinion of a physician) to conclude that these results are relevant to disabling or additional limitations not accounted for by the RFC that existed during the time period at issue, I must submit that the Appeals Council did not err in finding that the MRI results, which were taken after the ALJ's decision, are about a later date in time.   *Cf. Costa v. Comm'r of Soc. Sec.*, No. 6:12-CV-1307-ORL, 2014 WL 105086, at *11 (M.D. Fla. Jan. 10, 2014) (noting a treating physician's opinion that, based on x-rays taken after the period of disability and the doctor's own professional experience, the plaintiff's limitations were present during the disability period at issue).

But even assuming that the MRI results are chronologically relevant, they do not provide grounds for reversing the Appeals Council decision, because they are not new, non-cumulative evidence.   *See Clough v. Soc. Sec. Admin., Comm'r*, 636 F. App'x 496, 498 (11th Cir. 2016). Just like x-ray results that *were before the ALJ*, these MRI results show that Plaintiff has degenerative disc disease, which the ALJ found was a severe impairment.   (Tr. 91, 99, 834).   And though Plaintiff argues that the MRI provides new evidence (e.g., it shows that he suffers from deviations like moderate to severe left neuroforaminal stenosis at L5-S1 (Pl.'s Br. at 20)), the x-

ray results (which, again, were before the ALJ) also showed (like the MRI) secondary facet arthritis at L5-S1, along with osteophytes and facet changes, (Tr. 834) and the ALJ noted in his opinion that Plaintiff has "diffuse degenerative disc disease at the L3-4 to L5-S1 levels" (Tr. 103). Lastly, the MRI results are insufficient in and of themselves to show that Plaintiff's back issues causes a disabling limitation not accounted for by the RFC. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (stating that "a diagnosis or a mere showing of' 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Indeed, Sameena Yasmeen, M.D., who read the MRI results at issue, suggested only that Plaintiff follow up with epidural steroid injections (Tr. 91); thus Plaintiff has failed to show how the MRI would likely change the underlying decision.[4]

2.   Domingo Cerra-Fernandez, M.D., a psychiatrist, began treating Plaintiff seven months after the ALJ issued his decision. (Tr. 61). On June 14, 2015 (about fourteen months after the ALJ found that Plaintiff is not disabled), the doctor completed an untitled form that appears to be a mental impairment assessment form. (Tr. 83–88).

On that form, the doctor diagnosed Plaintiff with bipolar disorder (and what appears to be generalized anxiety disorder (GAD)) and found that Plaintiff had numerous severe limitations that

---

[4] Plaintiff also asserts that the ALJ mischaracterized the x-ray results from March 2014 as only showing "mild" findings. (Pl.'s Br. at 16). Yet substantial evidence supports the ALJ's characterization of those results (e.g., the ALJ noted that the results showed "'diffuse degenerative disc disease at the L3-4 to LS-SI levels . . . sacrum and coccyx appear unremarkable; pelvic ring is intact; and the sacroiliac joints demonstrate no evidence of significant degenerative arthritic change'" (Tr. 103) (quoting Tr. 835)) and the RFC more generally (e.g., the ALJ noted that Plaintiff's treating physician, Sameena Yasmeen, M.D., reported that Plaintiff's back pain was well-controlled with pain medication (Tr. 103, 514, 638)). Further, Plaintiff does not explain how the x-ray results themselves show that he has disabling or additional limitations that are not accounted for by the RFC. *See Wind*, 133 F. App'x at 690.

by themselves and in combination "disrupt the [Plaintiff's] ability to perform work of any type."[5] (Tr. 84–85). Also, Dr. Cerra-Fernandez checked a box that indicated that these severe limitations have been in effect since 2010 (about four years before the ALJ rendered his decision). (Tr. 88).

To begin with, the Appeals Council properly found that Dr. Cerra-Fernandez's opinion is not chronologically relevant. Although "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant," *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1322 (11th Cir. 2015), here—at best—the sole connection that Dr. Cerra-Fernandez postulates between his opinion and the disability period at issue is merely the box that he checked indicating that Plaintiff's purported limitations relate back to 2010. (Pl.'s Br. at 17–19). In other words, the doctor does not explain what evidence supports his opinion that the severe limitations he found existed, if at all, before the ALJ rendered his decision, e.g., Dr. Cerra-Fernandez does not assert that he reviewed Plaintiff's pre-decision medical records to conclude that the limitations at issue existed since 2010. *Cf. Washington*, 806 F.3d at 1322 (noting that a physician who offered a post-decision opinion had reviewed pre-decision evidence that confirmed the plaintiff suffered from hallucinations). Plaintiff argues that Dr. Cerra-Fernandez's treatment "notes reveal that Mr. Norton's bipolar disorder is very dependent on sleep so even minor stressors can trigger the anxiety which causes the insomnia which then disrupts the stability of the bipolar

---

[5] For example, Dr. Cerra-Fernandez found that Plaintiff had "poor or no[]" mental ability and aptitude to perform *unskilled* work in the following ways: maintain attention for two hour segments, maintain regular attendance and punctuality, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being duly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting extreme behaviors, respond appropriately to changes in a routine work setting, and deal with workplace stress. (Tr. 84). The doctor clarified that the above findings were explained by Plaintiff's disruptions in cognition, mood, anxiety, sleep, energy, and level of motivation, along with behavioral characteristics of bipolar disorder. (Tr. 84).

disorder" and that "[t]his was the basis for his opinion that was retrospective to 2010." (Pl.'s Br. at 18; Tr. 55). While the treatment notes confirm that Plaintiff is stable as long as he takes his medication and as long as he sleeps well, the treatment notes fail to explain how this evidence relates back to a prior time. (*See* Tr. 55).

And even assuming that this evidence is chronologically relevant, I cannot say that it would likely change the administrative outcome as Dr. Cerra-Fernandez's opinion directly conflicts with the pre-decision evidence. *See, e.g.*, *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011) ("Where the medical record contained a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date, we affirm only when that opinion was consistent with pre-insured-date medical evidence."); *Kroslowitz v. Colvin*, No. 3:12-CV-1140-J-JRK, 2014 WL 4655442, at *5 (M.D. Fla. Sept. 17, 2014) ("Even a retrospective diagnosis may be considered if it is validated by evidence within the relevant time period."). As the Commissioner notes, the ALJ found that Plaintiff had consistent Global Assessment of Functioning scores of 55 and 65 (Tr. 103–04, 574, 603, 627, 633, 775, 862, 885, 891, 894, 902), see *Gilabert v. Comm'r of Soc. Sec.*, 396 F. App'x 652, 653–55 (11th Cir. 2010) (noting that GAF scores from "the high 50s to 60s" indicates "only moderate difficulty in functioning"); was found to be cooperative and calm; had normal speech, concentration and memory; had normal and goal-directed thought processes; lacked auditory and visual hallucinations; and had good judgment and insight (Tr. 103, 626, 700, 724, 737, 744, 871, 878–79, 889). Further, state-agency psychologist Keith Bauer, Ph.D, found that Plaintiff had only mild restrictions in activities of daily living; mild difficulties in maintaining concentration, persistence, and pace; mild difficulties in social functioning; and no episodes of decompensation. (Tr. 105, 157).

And Dr. Cerra-Fernandez's opinion also conflicts with other post-decision evidence. After the ALJ issued his decision in April 2014, Frederick Petty, Ph.D., M.D., continued to treat Plaintiff's bipolar disorder until August of 2014.  (*See* Pl.'s Br. at 8).  In sum, Dr. Petty made no findings that Plaintiff suffers from the severe limitations that Dr. Cerra-Fernandez found.  For example, in July 2014 Dr. Petty found that Plaintiff was stable, motivated, was sleeping well, was coherent, alert, and not was suicidal (Tr. 846–48, 866–70).

Finally, this is not the case where the Court is faced with evidence of psychiatric issues that were ill-developed by the ALJ or where the plaintiff raises new psychiatric issues for the first time; instead, the ALJ addressed Plaintiff's mental health issues of bipolar disorder and affective mood disorder (Tr. 99–105) and the evidence before the ALJ included multiple GAF scores, numerous treatment notes from mental health physicians who treated Plaintiff during the time period at issue (Tr. 474–80, 598–03, 624, 740–47), and the opinion of a state-agency psychologist who opined that Plaintiff had only mild mental limitations.  *See Porter v. Shalala*, No. 93-AR-2689-S, 1994 WL 686920, at *2 (N.D. Ala. July 15, 1994) ("A close reading of the case law involving psychological evidence acquired after an ALJ's final determination in social security cases indicates that the evidence is 'new and noncumulative' if it sheds new light on ill-developed psychiatric issues, or raises psychiatric issues not previously addressed in the record.") (citations omitted) (citing *Milano v. Bowen*, 809 F.2d 763 (11th Cir.1987) and *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir.1985)).

Based on all of the above, the Appeals Council properly rejected Dr. Cerra-Fernandez's opinion.

- 14 -

## IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**RECOMMENDED** in Ocala, Florida on March 3, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Courtroom Deputy
Counsel of Record
Unrepresented Parties